UNION PLANTERS NATIONAL BANK,
Administrator D. B. N., C. T. A. of the estate of JAMES
J. CORBITT, Deceased, and Trustee under the Last Will
and Testament of JAMES J. CORBITT, Deceased,
Appellee, v. EDWIN CORBITT et al.,
Appellants-Appellees. —474 S.W.2d 139.

Western Section. August 5, 1971.

Certiorari Denied by Supreme Court December 6, 1971.

James W. Watson, Memphis, for certain defendants-appellants.

W. P. O'Neil, O'Neil, Parker & Williamson, Knoxville, for certain defendants-appellees.

Kenneth F. Clark, Jr., Memphis, for certain defendants-appellees; McCloy, Wellford & Clark, Memphis, of counsel.

George M. Quin, Gulfport, Miss., for certain intervening petitioners-appellants.

Hardison, Robertson & McCarroll, Memphis, Guardian Ad Litem.

Krivcher & Cox, Memphis, for Union Planters National Bank.

MATHERNE, J.  This lawsuit was filed in the Chancery Court of Shelby County, Tennessee for a construc-

tion of the Last Will and Testament of James J. Corbitt, deceased.

James J. Corbitt died a bachelor on February 26, 1967. The controversy is between the adopted children of his niece, herein called the Drake Heirs, and his first cousins, herein called the Corbitt Heirs.

James J. Corbitt's parents predeceased him, and he had one sister, Elizabeth Corbitt Pryor, who died in April, 1966. That sister had a daughter Eloise Pryor, who married James Hampton Drake, Sr., on March 24, 1967. On December 15, 1967, Eloise Pryor Drake, then a resident of Georgia, adopted her stepchildren, Letitia Drake Ballard, James Hampton Drake, Jr., and John Horn Drake, then 33 years, 18 years, and 15 years of age respectively. On December 8, 1968, Eloise Pryor Drake and her husband James Hampton Drake, Sr., were killed in an automobile accident, survived by the three adopted children, the Drake Heirs.

James J. Corbitt and his sister were the only children of Fredrick F. and Mary Annette Corbitt. James J. Corbitt was the grandson of E. V. and Mary Corbitt who had, in addition to Corbitt's father, five children, three of whom died without issue or spouse surviving. Of the other two, a girl, Anna Corbitt, married Thomas Alexander, and they were survived by one child, the defendant Anna Perle Alexander. The other John Corbitt, is survived by two children, the defendants Edwin Corbitt and Maurice Corbitt, one other child having died without issue and unmarried, Anna Perle Alexander and Edwin and Maurice Corbitt are the Corbitt Heirs.

Anna Perle Alexander died intestate on March 4, 1970, during the pendency of this lawsuit. First National Bank of Memphis as the duly qualified Administrator of her estate, and Boyce Alexander Gooch, James B. Alexander, Jean Alexander West and Marie Alexander as her sole heirs at law and next of kin, consented that this suit be revived as against them, which was accomplished by Order of the Chancellor signed November 6, 1970.

A Petition to Intervene was filed on behalf of certain descendants of Lucy Ann Corbitt, a sister of the testator's grandfather, E. V. Corbitt. By Order of the Chancellor they were allowed to intervene, and were represented in the cause.

The Will in question was prepared by W. G. Boone, an attorney of the Memphis Bar, now deceased, and executed on February 11, 1957. The Will was probated in Shelby County on March 16, 1967.

The testator, after making certain specific bequests, left the residue in trust for the benefit of his sister, Elizabeth Corbitt Pryor, and his niece, Eloise Pryor, or the survivor, providing the income be paid one-half to each for her lifetime and all of the income to the survivor for her lifetime. The trust terminated upon the death of the survivor, and the provision of the Will which requires construction is as follows:

## Item III

"B. *Distribution of Corpus.* . . . The corpus of this trust estate shall be distributed at the time or times and upon the conditions as follows, to wit:

1. Upon the death of the survivor of my sister and my said niece or at my death, whichever is later, I direct that the whole of the said corpus be paid and delivered to the issue of my said niece, per stirpes, but if there be none living at such time, then to the persons who are at that time, my heirs at law and next of kin in accordance with the statutes of descent and distribution of the State of Tennessee.''

The Chancellor held the Drake Heirs do not take either as ''issue'' of Eloise Pryor Drake, nor as ''heirs at law and next of kin'' of the testator. The Chancellor held the Corbitt Heirs took the entire estate, personal and real, one-third to each party; the heirs at law and next of kin of Anna Perle Alexander, deceased, taking her one-third interest.

The Chancellor further found the intervening petitioners had no interest in the estate because they claimed as parties within the fifth degree or greater, wherein the Corbitt Heirs are kin to the testator as descendants from a common ancestor in the fourth degree.

The Drake Heirs and the intervening petitioners appeal to this Court. By appropriate Assignments of Error certain appellants challenge the Decree of the Chancellor.

We hold the questions to be: First, Did the testator intend to include adopted children of his niece as the objects of his bounty? This intent must be found from the four corners of the Will, but the question is brought into focus by the provision that upon the death of the two life beneficiaries under the trust, ''I direct that the whole of said corpus be paid and delivered *to the issue*

of my said niece, per stirpes, * * *.'' (emphasis added) If the intent be shown that the foregoing provision include adopted children of the niece, the matter is settled. If such intent not be found, the second issue arises, namely, do the adopted children of the testator's niece constitute heirs at law and next of kin of the testator in accordance with the laws of descent and distribution of the State of Tennessee, and if so, to what degree?

■ As found by the Chancellor there is no expression in the Will indicating an intent to include or to exclude adopted children of Eloise Pryor Drake. It is therefore necessary to determine the testator's intent as expressed within the four corners of the instrument; considering the facts and circumstances at the time of its execution, and the general principles of law applicable to the questions involved.

■ In determining the right of an adopted child to take under the will of a person other than the adopter, it is not a question of the adopted child's right to inherit, but simply a question of the testator's intent with respect to those who are to share in his estate. 2 Am.Jur.2d, Adoption sec. 92, p. 934; Ross v. Bateman (1956) 200 Tenn. 148, 291 S.W.2d 584.

In deciding the question of intent, we look to the entire Will and the language used by the testator. Burton v. Kinney (1950) 191 Tenn. 1, 231 S.W.2d 356. There is no language modifying, interpreting or enlarging upon the word ''issue.'' We would therefore conclude the testator intended the word be given its usual meaning.

''As used in a will designating beneficiaries, the word 'issue' has for its primary, presumptive, or general

meaning, in addition to other qualifying adjectives, the heirs of the body, that is, heirs begotten or borne by the person referred to, or apart from statute, lineal descendants generally. * * * This meaning will be given it unless there is a discoverable intent to the contrary from the context of the will, or from extraneous facts proper to be considered." 95 C.J.S. Wills sec. 666(b), p. 977. See also; Phillips, Pritchard, Law of Wills, Vol. 1, secs. 439 and 440, p. 384; Restatement of the Law of Property, Vol. 3, sec. 292, p. 1545.

■ In the absence of an intent to the contrary, we hold the word "issue" does not include a child adopted after the death of the testator. 95 C.J.S. Wills sec. 666(c)(3) (A), p. 976; 86 A.L.R.2d 64, 78.

■ We further hold the words "issue," "children," "heirs" and words of similar import in a will, are intended to refer to natural or blood relationships and do not include a person not adopted by the testator, but by another, in the absence of circumstances clearly showing the testator so intended. See and compare: Ross v. Bateman, supra; Third National Bank v. Noel (1945) 183 Tenn. 349, 192 S.W.2d 825.

■ As to the circumstances surrounding the execution of the testator's Will, the record reveals James J. Corbitt was a bachelor, living at the Peabody Hotel at Memphis, at the time the Will was executed. He was close to his uncle John Corbitt of Millington, the father of the testator's first cousins, defendants Maurice and Edwin Corbitt. He was also close to his other first cousin, Perle Alexander, of Memphis. At a later date, James J. Corbitt purchased a dwelling, and his sister, Elizabeth

Pryor, and her daughter, Eloise Pryor, made their home with him. There is no indication in the record but what James J. Corbitt enjoyed a good, normal relationship with his blood kin.

At the time the Will was executed the testator's niece, Eloise Pryor, was 51 years of age, unmarried and without children. The appellants stress this fact as very important concerning the intent of the testator, when he provided her "issue" would take upon the termination of the two life estates set up in the trust. The appellants argue the testator must have intended some one other than natural children of Eloise Pryor would take as her "issue" upon the termination of the trust. Appellants further insist the testator did thereby indicate his intent that adopted children of Eloise Pryor would take as her "issue."

James Hampton Drake, Sr., who married Eloise Pryor after the death of the testator, was unknown to the testator at the time the Will was executed. In fact, the testator met James Hampton Drake, Sr. only one time in his life, that being approximately two months prior to the testtator's death. Apparently the testator had no knowledge his niece would marry James Hampton Drake, Sr., and there is no proof the testator in any manner suspected his niece would, after the testator's death, adopt the three children of James Hampton Drake, Sr. In fact, Letitia Drake Ballard was not even the natural daughter of James Hampton Drake, Sr., but was the daughter of his first wife.

Under these circumstances we cannot find the necessary intent on the part of the testator to include these

three adopted children of the testator's niece as her "issue" so as to vest in them the entirety of the testator's estate to the exclusion of his blood kin.

█ Having determined the testator did not intend to include the adopted children of his niece as objects of his bounty, and there being no "issue" of the testator's niece, we must now decide whether those adopted children are included within the provision, "then to the persons who are at that time my heirs at law and next of kin in accordance with the statutes of descent and distribution of the State of Tennessee."

In presenting their views on this issue, the parties by brief and argument treat the determinative question as being whether the adoption statutes of Tennessee in existence at the time the Will was executed and when the testator died should control, or, should the adoption statutes control which were in effect on the date of death of the testator's niece. By this approach the parties erroneously read the adoption statutes of Tennessee into the Will of James J. Corbitt.

James J. Corbitt did not die intestate; neither does the provision of the Will now being considered, "to the persons who are at that time my heirs at law and next of kin in accordance with the statutes of descent and distribution of the State of Tennessee," render his property subject to intestate succession. Had his property been subject to intestate succession, several statutes other than the statutes of descent and distribution might have been applicable, for example, the adoption laws, the legitimation laws, and the bastardy laws all carry provisions relating to the right of certain people to inherit. James

J. Corbitt, however, executed his Will which has been duly probated, and the courts cannot read into that Will statutes of inheritance not contemplated by the testator.

Our statutes of descent and distribution, except as to a surviving spouse, are based solely on blood kinship and follow the lines of consanguinity. Black v. Washam (1967), 57 Tenn.App. 601, 421 S.W.2d 647, and the authorities therein cited. It is therefore apparent the adopted children of the testator's niece cannot be included within the meaning of the testator's "heirs at law and next of kin in accordance with the statutes of descent and distribution of the State of Tennessee."

The only way the adopted children of the testator's niece could have any right of inheritance or succession to the property in question would be by virtue of the adoption statutes. We find no reference in the testator's Will to the adoption statutes. To the contrary there is a clear devise "to the persons who are at that time my heirs at law and next of kin in accordance with the statutes of descent and distribution of the State of Tennessee." The testator did thereby specifically limit the class in accordance with the statutes of descent and distribution, and the courts have no authority to extend the class to any person, or group, not so included.

As to the rights of the intervening petitioners, we agree with the Chancellor that the intervening petitioners, being descendants of a sister of the testator's grandfather, are more distantly removed than are the first cousins of the testator.

It results all Assignments of Error are overruled; the Decree of the Chancellor is affirmed, and this cause is

remanded to the Chancery Court for a ruling on the question of attorney's fees, which question was expressly reserved by the Chancellor. The cost of this appeal, under the equities of the entire case, is adjudged against the estate of James J. Corbitt, which cost the Administrator C.T.A. is authorized and directed to pay.

Carney, P.J., and Nearn, J., concur.