**Miljenko Victor BANOVIC,
Plaintiff-Appellant,**

v.

**Mrs. Juliet Meriwether DAVIS, et al.,
Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section.

July 30, 1982.

Permission to Appeal Denied by
Supreme Court Nov. 22, 1982.

**154**

Tyree B. Harris, Nashville, Dempsey H. Marks, Clarksville, for plaintiff-appellant.

Gary M. Brown, Nashville, for defendants-appellees.

## OPINION

TODD, Presiding Judge.

This is a suit to interpret a will. From an adverse decision, the plaintiff has appealed.

The issue stated by appellant is as follows:

Is Maljenko Victor Banovic, the adopted son of Mrs. Maree Meriwether Figuers, entitled to the corpus of a trust which was left to Mrs. Figuers for life with remainder to her issue?

The facts are stipulated. Facts pertinent to this appeal are as follows.

On September 9, 1944, testatrix executed a will and a codicil thereto, both prepared by counsel.

On April 30, 1945, both will and codicil were republished by an instrument prepared by counsel.

On January 9, 1946, testatrix executed a second codicil prepared by counsel.

On January 13, 1949, testatrix died; and, on January 31, 1949, the will and two codicils were duly probated.

After certain specific bequests, testatrix devised and bequeathed to a named Trustee all of the rest and residue of her estate with the following directions:

1. Pay net income in equal shares to testatrix's daughter and three granddaughters, Judith Browning Sikes, June Browning Gevedon and Maree Meriwether Figuers, during their natural lives.

2. If any granddaughter should die before testatrix's daughter, pay her share of income to her issue; or, if a granddaughter dies without issue, divide her income among surviving granddaughters or their issue.

3. The will further provides verbatim:

This trust shall continue throughout the life of my daughter, Juliet Meriwether Davis, and upon her death the trust estate and all assets therein shall be divided into three equal shares and one of such shares shall be held in trust for Judith Browning Sikes, and the income therefrom paid to her throughout her lifetime, and one of such shares shall be held in trust for Jane Browning Gevedon and the income therefrom shall be paid to her throughout her lifetime, and the other of such shares shall be held in trust for Maree Meriwether Figuers, and the income therefrom shall be paid to her throughout her lifetime.

Upon the death of Judith Browning Sikes (or if Judith Browning Sikes should die prior to the death of my daughter Mrs. Juliet Meriwether Davis, then upon the death of my said daughter), the trust shall terminate in respect to the share of the trust estate held for the benefit of my said granddaughter and all of the assets held therein for my said granddaughter shall be distributed among her issue, per stirpes.

Upon the death of Jane Browning Gevedon (or if Jane Browning Gevedon should die prior to the death of my daughter, Mrs. Juliet Meriwether Davis, then upon the death of my said daughter), the trust shall terminate in respect to the share of the trust estate held for the benefit of my said granddaughter and all of the assets held therein for my said granddaughter shall be distributed among her issue, per stirpes.

Upon the death of Maree Meriwether Figuers (or if Maree Meriwether Figuers should die prior to the death of my daughter, Mrs. Juliet Meriwether Davis, then upon the death of my said daughter), the trust shall terminate in respect

to the share of the trust estate held for the benefit of my said granddaughter and all of the assets held therein for my said granddaughter shall be distributed among her issue, per stirpes.

If either of my said granddaughters should die after the death of my daughter without leaving issue surviving, then her share of the trust fund shall be added to that portion or share of the trust fund set apart for my other granddaughters and shall be distributed to them or to their issue.

It is intended that the trust herein created shall continue through the lives of my daughter, Mrs. Juliet Meriwether Davis, and my three granddaughters, Mrs. Judith Browning Sikes, Mrs. Jane Browning Gevedon, and Mrs. Maree Meriwether Figuers, and the fund shall then be distributed to the issue of such beneficiaries; in the event that at the time of the termination of the trust herein set out there are no issue of my daughter or my three said granddaughters then surviving, then the trust fund shall be delivered over to my next of kin living at that time under the laws of distribution then in effect in Tennessee.

On March 29, 1976, the Tennessee General Assembly enacted Chapter 751 of the Public Acts of 1976, T.C.A. § 36–126, which provided rights of adopted children, including the following language:

. . . In the construction of any instrument, whether will, deed or otherwise, and whether executed before or after March 29, 1976, a child so adopted and the descendants of such child shall be deemed included within a class created by any limitation contained in such instrument restricting a devise, bequest or conveyance to the lawful heirs, issue, children, descendants, or the like, as the case may be, of the adoptive parents, or of an ancestor or descendant of one of them, and such adopted child shall be treated as a member of such a class *unless a contrary intention clearly shall appear by the terms of such instrument* or unless the particular estate so limited shall have vested in and as to the person or persons entitled thereto on March 29, 1976. (Emphasis supplied)

On April 30, 1976, a decree was entered by the Juvenile Court of Dallas County, Texas, whereby Maree Meriwether Figuers adopted the plaintiff, then aged 39 years.

Maree Meriwether Figuers died on December 13, 1978. She was not survived by any children or descendants, natural or adopted, except plaintiff.

The memorandum of the Chancellor states, and no question is made of the fact that Mrs. Juliet Meriwether Davis, daughter of testatrix, died on September 20, 1980.

Under the terms of the will, above quoted, after the death of Maree Meriwether Figuers, the income previously paid to her should be divided between the other granddaughters named in the will, or their issue. The Trustee took the position that plaintiff, the adopted son of Maree Meriwether Figuers, was not her "issue"; and since she had no other descendants, the income was divided between the other named granddaughters.

Also, according to the will, above quoted, upon the death of Juliet Meriwether Davis the one third share of the assets previously held in trust for Maree Meriwether Figuers was to be distributed "among her issue per stirpes." Also, the issue of Maree Meriwether Figuers had a contingent interest in other parts of the trust under the last paragraph quoted above.

The plaintiff, adopted son of Maree Meriwether Figuers, filed this suit to recover the income payable to the "issue" of Maree Meriwether Figuers from the date of her death to the date of the death of Juliet Meriwether Davis and to a share of the trust assets under the direction of the will for delivery of same to the "issue per stirpes" of Maree Meriwether Figuers.

The Chancellor held that the intent of the testatrix was to limit the devise in question to the bodily issue of Maree Meriwether Figuers and that the statute, above quoted, did not change the intent of the testatrix. Accordingly, plaintiff's suit was dismissed.

On appeal, plaintiff-appellant relies entirely upon the provision of Chapter 751 of the Public Acts of 1976, quoted above, and asserts that the present case involves neither of the exceptions provided therein, i.e.:

a. "... unless a contrary intention clearly shall appear by the terms of such instrument...." or

b. "unless the particular estate so limited shall have vested in and as to the person or persons entitled thereto on March 29, 1976."

In respect to the first "unless" (a), appellant insists that there is no expression of intention in the will to indicate a "contrary intention." Appellant refers to the concluding sentence of the above quotation from the will as follows:

"In the event that at the time of the termination of the trust herein set out there are no issue of my daughter or my three granddaughters then surviving, then the trust fund shall be delivered over to my next of kin living at that time *under the laws of distribution then in effect in Tennessee.* (Emphasis supplied)

■ This Court cannot agree with the foregoing argument of appellant. The fact that testatrix was willing for future enactments to control ultimate distribution of her estate in the unlikely event of complete failure of issue is not evidence of an intent to allow future enactment to change her intent under other circumstances.

A will is to be interpreted as speaking and taking effect at the death of the testatrix. T.C.A. § 32–301.

The applicable layman's definition of issue is:

4. *Offspring, progency* (died without issue); specif. one or more persons descended from a common ancestor.

Webster's Third New International Dictionary, Unabridged.

The same authority states that the verb, issue, is derived from the latin exire, to go out, the french ex + ire, to go out, and the Greek icnai to go out. The various definitions of the verb, issue, convey the meaning of coming forth or flowing out of.

■ Where a testator uses technical words, he will be taken to use them in their legal sense unless the context clearly indicate the contrary. *Wood v. Polk,* 59 Tenn. (12 Heisk) 220 (1873).

■ Where a will is drafted by a lawyer, technical words used therein must be given technical meanings. *Third National Bank in Nashville v. Noel,* 183 Tenn. 349, 192 S.W.2d 825 (1946); *American Nat. Bank & Tr. Co. v. Mander,* 36 Tenn.App. 220, 253 S.W.2d 994 (1952).

In *Union Planters National Bank v. Corbitt,* 63 Tenn.App. 430, 474 S.W.2d 139 (1971), the question was whether the words, "issue of my said niece" included children adopted by the niece after the death of the testator. This Court held that the adopted children were not included and said:

[2] In determining the right of an adopted child to take under the will of a person other than the adopter, it is not a question of the adopted child's right to inherit, but simply a question of the testator's intent with respect to those who are to share in his estate. 2 Am.Jur.2d, Adoption sec. 92, p. 934; *Ross v. Bateman* (1956) 200 Tenn. 148, 291 S.W.2d 584.

. . . .

"As used in a will designating beneficiaries, the word 'issue' has for its primary, presumptive, or general meaning, in addition to other qualifying adjectives, the heirs of the body, that is, heirs begotten or borne by the person referred to, or apart from statute, lineal descendants generally * * * This meaning will be given it unless there is a discoverable intent to the contrary from the context of the will, or from extraneous facts proper to be considered." 95 C.J.S. Wills sec. 666(b), p. 977. See also Phillips, Pritchard, Law of Wills, Vol. 1, secs. 439 and 440, p. 384; Restatement of the Law of Property, Vol. 3, sec. 292, p. 1545.

[3] In the absence of an intent to the contrary, we hold the word "issue" does not include a child adopted after the death of the testator. 95 C.J.S. Wills sec. 666(c)(3)(A), p. 976; 86 A.L.R.2d 64, 78.

We further hold the words "issue," "children," "heirs" and words of similar import in a will, are intended to refer to natural or blood relationships and do not include a person not adopted by the testator, but by another, in the absence of circumstances clearly showing the testator so intended. See and compare: *Ross v. Bateman,* supra; *Third National Bank v. Noel* (1945) 183 Tenn. 349, 192 S.W.2d 825. (63 Tenn.App. at 436–437.)

The quoted authority was decided after the present will was written and after the death of the testatrix, but the authorities cited therein antedate the execution of the will and death of the testatrix, and the law declared therein had been long recognized and was the law at the time of the execution of the will and at the death of the testatrix. See the authorities cited in 95 C.J.S., § 666(b), note 6; and 86 A.L.R.2d 48 ff.

The adoption statute, Code of Tennessee, § 9570, in effect at the death of testatrix, made adopted children heirs and next of kin to the adoptive parent, but not of relatives of the adoptive parent. As to such, the adopted child was "a stranger to the blood." *Helms v. Elliott,* 89 Tenn. (5 Pick) 446, 14 S.W. 930 (1890).

The language of the will, quoted above, contains the expression, "issue per stirpes", which means, "that which flowed out of the roots or stocks."

A contrary intention therefore clearly appears by the terms of the instrument in their ordinary and technical meaning. That is, it clearly appears that the testatrix intended that only blood descendants of her granddaughters should inherit under the will, or, conversely, that she intended to exclude non-blood descendants such as adopted children.

Therefore, this Court concurs in the conclusion of the Chancellor that the statute, T.C.A. § 36–126 excludes the present case under its own terms because "a contrary intent clearly appears."

Since the foregoing is dispositive of the appeal, it is unnecessary to discuss or dispose of other contentions of the parties.

The decree of the Chancellor is affirmed with costs. The cause is remanded for such further proceedings as may be necessary and proper.

Affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.